**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| **LAURA WOLF,** individually and on behalf of all others similarly situated,<br>℅ DannLaw<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>Plaintiffs,<br><br>v.<br><br>**UNLIMITED TECHNOLOGY SYSTEMS, LLC**,<br>℅ Corporation Service Company, Reg. Agent<br>1160 Dublin Road, Suite 400<br>Columbus, OH 43215<br><br>Defendant. | Case No.:<br><br>Judge<br>Magistrate Judge<br><br>**CLASS ACTION COMPLAINT WITH JURY DEMAND** |

Plaintiff Laura Wolf, individually, and on behalf of all others similarly situated ("Plaintiff"), through her attorneys, brings this action against Defendant Unlimited Technology Systems, LLC ("Defendant"), and alleges upon personal knowledge as to her own actions and experiences, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1. Defendant provides practice management software and services to health care organizations and providers. In carrying out these for-profit activities, Defendant solicited, collected, digitized, aggregated, stored, and failed to protect Plaintiff's and Class members' sensitive personally identifiable and health information ("Private Information") from foreseeable and preventable threats of cyberattack.

2. Defendant failed to comply with regulatory, legal, ethical, and industry standards

for cybersecurity and confidentiality of patient records, failed to take reasonable security measures, such as training employees to identify phishing emails, employing biometric or multi-factor authentication requirements for authorized users, and monitoring for unusual activity, and failed to prevent, detect, and adequately respond to a foreseeable data breach carried out by cyber criminals.

3. As a result, criminals gained unauthorized access to, copied, and stole Plaintiff's and Class members' Private Information (the "Data Breach").

4. Plaintiff received a letter dated July 20, 2026, stating that, on October 19, 2025, Defendant discovered unauthorized activity within its "commercial datacenter." An image taken of the letter is attached to the Complaint as **Exhibit A**.

5. At some point after Defendant's discovery, which Defendant does not specify, Defendant found "evidence that an unauthorized actor obtained a copy of some of [Plaintiff's] personal information between October 5 and October 10, 2025."

6. According to the letter, the criminals obtained Plaintiff's name, health insurance information, patient balance information, insurance policy numbers, benefits information, medication information, medical records, copies of government-issued IDs, insurance cards, patient intake forms, Social Security number, date of birth, demographic information, email address, home address, phone number, and other personal information.

7. Although Defendant claims that it learned of the Data Breach on October 19, 2025, it unreasonably delayed notifying Plaintiff by mailing a letter to her on July 20, 2026, giving the criminals a head start to commit identity fraud, theft, and wreak havoc to Plaintiff's and Class members' personal finances, identities, and accounts.

8. On July 21, 2026, Defendant notified the U.S. Department of Health and Human

Services of the Data Breach, reporting that 3,803,750 patient records were impacted in a hacking/IT incident.

9. As a direct result of the Data Breach, Plaintiff and Class members have suffered numerous concrete injuries and will suffer additional injuries into the future. Plaintiff seeks damages and other legal and equitable relief for the following categories of harms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d) loss of time and loss of productivity heeding Defendant's warnings and following its instructions in Defendant's notice letter; (e) financial costs incurred due to actual identity theft; (f) the cost of future identity theft monitoring; (g) loss of time incurred due to actual identity theft; (h) failure to receive the benefit of the bargain when Defendant failed to provide adequate and reasonable protection that caused the Data Breach; and (i) deprivation of value of Private Information.

10. Plaintiff brings this class action against Defendant for Defendant's negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, and unjust enrichment. Plaintiff seeks injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law.

**PARTIES, JURISDICTION & VENUE**

11. Plaintiff is a natural person and a citizen of New Jersey.

12. Defendant is an Ohio LLC with its principal place of business in Cincinnati, Ohio.

13. This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action involving 100 or more Class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Many members of the Class, including Plaintiff, are citizens of different states from Defendant.

14. Venue is proper because Defendant resides in this District and a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

15. Defendant is a HIPAA-regulated business associate that provides revenue cycle software and various software-related services for health care providers.

16. Defendant claims that it works with more than 4,500 clinical offices and more than 6,500 specialty providers.[1]

17. Plaintiff and Class members received healthcare from providers that used services from Defendant. To that end, Plaintiff and Class members were required to provide Defendant with their Private Information, authorize their healthcare providers to share Private Information with Defendant, and permit Defendant to organize, digitize, process, store their Private Information alongside other persons' Private Information on Defendant's servers or third-party servers, and handle such data in accordance with the law, ethical and professional duties, and industry standards.

18. Plaintiff and Class members relied on Defendant to keep their Private Information secure, and to use it only for purposes of treatment and billing for authorized treatment, and to implement and follow adequate and reasonable data collection, storage, and retention policies. Defendant maintained and stored the Private Information on systems and networks that were inadequately protected and ultimately accessed without authorization by criminals in the Data Breach.

19. Defendant owed Plaintiff and Class members numerous statutory, regulatory,

[1] https://www.unlimitedsystems.com/company/ (last visited Aug. 12, 2026).

ethical, contractual, and common law duties to safeguard and keep Plaintiff's and Class members' Private Information confidential, safe, secure, and protected from unauthorized disclosure, access, dissemination, and theft.

20. In October 2025, and perhaps earlier, hackers accessed Defendant's systems, stole Plaintiff's and Class members' Private Information without Defendant knowing, and maintained access to the systems without being detected for weeks.

21. Defendant's security was insufficient to prevent or detect the Data Breach.

22. Defendant's security was inadequate to respond to the Data Breach.

23. Defendant's security was insufficient to monitor and detect the activities of the unauthorized persons.

24. On or about October 19, 2025, Defendant finally discovered the Data Breach, but the damage was already irreparable.

25. Then, Defendant failed to notify Plaintiff and Class members of the Data Breach until after July 20, 2026. Plaintiff and Class members were the most acutely at risk of suffering harm because of the Data Breach, yet Defendant notified them last. There was no excuse for Defendant to delay so long in providing notice, especially after the Data Breach had begun at least nine months prior.

26. Currently, the full extent of the types of sensitive personal information, the scope of the Data Breach, and the details regarding how the Data Breach was carried out are all within the exclusive control of Defendant. However, Plaintiff and Class members are aware that the type of data that was stolen now provides a one-stop shop for identity thieves to wreak complete havoc on their lives. Given the sensitivity and non-modifiable nature of the Private Information, and the

criminal targeting and theft of the data, Plaintiff and Class members have all experienced a materialized and imminent risk of identity theft.

27. Defendant could have prevented the Data Breach by properly securing and encrypting the Private Information of Plaintiff and Class members, by properly training its employees to recognize and prevent cybersecurity risks, and/or by implementing and following adequate procedures to monitor and detect data breaches. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class members was exacerbated by the repeated warnings and alerts directed to U.S. companies warning that they should protect and secure sensitive data, especially in light of the substantial increase in cyberattacks specifically targeting the healthcare sector.

28. The FBI has been warning healthcare providers, covered entities, and business associates, such as Defendant, about the threat posed by the ransomware and others, and to be on the lookout for attacks.

29. The United States Cybersecurity & Infrastructure Security Agency, Department of Justice, and Department of Health & Human Services issued a Joint Cybersecurity Advisory on October 28, 2020, warning of an acute threat to U.S. hospitals and healthcare providers and advising them on how to "ensure that they take timely and reasonable precautions to protect their networks from these threats."[2] The Advisory details at great length the pathways of specific viruses, malware, and online threats, and lists numerous Mitigation Steps, including:

- Patch operating systems, software, and firmware as soon as manufacturers release updates;

---

[2] https://www.cisa.gov/uscert/sites/default/files/publications/AA20-302A_Ransomware%20_Activity_Targeting_the_Healthcare_and_Public_Health_Sector.pdf (last visited Aug. 12, 2026).

- Check configurations for every operating system version for organization-owned assets to prevent issues from arising that local users are unable to fix due to having local administration disabled;
- Regularly change passwords to network systems and accounts and avoid reusing passwords for different accounts;
- Use multi-factor authentication where possible;
- Disable unused remote access/remote desktop protocol (RDP) ports and monitor remote access/RDP logs;
- Implement application and remote access allow listing to only allow systems to execute programs known and permitted by the established security policy;
- Audit user accounts with administrative privileges and configure access controls with least privilege in mind;
- Audit logs to ensure new accounts are legitimate;
- Scan for open or listening ports and mediate those that are not needed;
- Identify critical assets such as potential database servers, medical records, and telehealth and telework infrastructure; create backups of these systems and house the backups offline from the network;
- Implement network segmentation. Sensitive data should not reside on the same server and network segment as the email environment;
- Set antivirus and anti-malware solutions to automatically update; conduct regular scans.

30. In addition, the Advisory emphasizes a focus on awareness and training. Because

end users are targeted, employees need to be aware of threats and how they are delivered.

31. On information and belief, the hackers who carried out the Data Breach used rudimentary tactics for deploying malware on data rich systems, such as basic phishing emails, social engineering, and credential stuffing. Such attacks are detectable and preventable with the right policies and tools in place, and through proper training in combination with industry standard security measures, such as multi-factor authentication, biometric authentication, and commercially available antimalware products.

32. Even with a successful initial infection vector through basic hacking techniques, the Data Breach could have been identified and halted quickly had Defendant implemented widely available software capable of fully detecting and preventing the Data Breach. Because the Data Breach occurred over the course of many days, it is apparent Defendant did not use these tools, or had them and ignored their alerts.

33. Despite the well-known risks and reasonable and effective protections, Defendant unreasonably failed to properly train employees, failed to implement industry standard security measures, and maintained highly sensitive patient information in a manner they knew or should have known was vulnerable to access and exfiltration.

34. Despite the prevalence of public announcements of these data breach and data security compromises and despite numerous attempts on the part of the federal government to inform companies, like Defendant, of the threats facing Defendant, and despite having ample time to implement precautions and training, Defendant was negligent and did not adequately prepare for this wholly foreseeable event; thus, allowing extremely sensitive data to be accessed, viewed and stolen by criminals. Defendant breached its duty to take appropriate steps to protect Plaintiff's and Class members' Private Information from being compromised and failed to adequately notify

them that the Data Breach took place.

35. Unfortunately for Plaintiff and Class members, their Private Information was not secured in the manner required by law that would have prevented the Data Breach.

36. What is worse, despite Defendant's obligations under the law to promptly notify affected individuals so they can take appropriate action, Defendant failed to promptly provide such notice in the most expedient time possible and without unreasonable delay, failed to include in the Data Breach notification letter a sufficient description of the Data Breach or the information needed by Plaintiff and Class members to react appropriately to the Data Breach, including taking whatever mitigation measures are necessary.

37. As a result, this unauthorized access, disclosure, and exfiltration remains unremedied, and Plaintiff and Class members will have to continue to monitor their accounts and Private Information to protect themselves.

38. Defendant had specific obligations imposed on them by contracts and law to ensure the adequate protection of such information. For example, as a business associate under HIPAA, Defendant was required to maintain the confidentiality and security of the Private Information of Plaintiff and Class members.

39. Defendant is regulated by the Health Insurance Portability and Accountability Act ("HIPAA") (45 C.F.R. § 160.102), and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, which establish national security standards and duties for Defendant's protection of medical information maintained in electronic form.

40. HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

41. "Electronic protected health information" ("PHI") is defined as "individually identifiable health information ... that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

42. HIPAA's Security Rule requires Defendant to: (a) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits; (b) protect against any reasonably anticipated threats or hazards to the security or integrity of such information; (c) protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and (d) ensure compliance by its workforce.

43. HIPAA also requires Defendant to "review and modify the security measures implemented ... as needed to continue provision of reasonable and appropriate protection of electronic protected health information," 45 C.F.R. § 164.306(c), and also to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

44. The facts of the Data Breach establish that Defendant failed to comply with these Rules. The Data Breach resulted from a combination of inadequacies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations, including, but not limited to, the following:

(a) Failing to ensure the confidentiality and integrity of electronic PHI that

Defendant create, receive, maintain, and transmit, in violation of 45 C.F.R. section 164.306(a)(1);

(b) Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. section 164.312(a)(1);

(c) Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. section 164.308(a)(1);

(d) Failing to identify and respond to suspected or known security incidents and mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 C.F.R. section 164.308(a)(6)(ii);

(e) Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. section 164.306(a)(2);

(f) Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. section 164.306(a)(3);

(g) Failing to ensure compliance with HIPAA security standard rules by its workforce, in violation of 45 C.F.R. section 164.306(a)(4);

(h) Impermissibly and improperly using and disclosing PHI that is and remains

accessible to unauthorized persons, in violation of 45 C.F.R. section 164.502, *et seq.*;

(i) Failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. sections 164.530(b) and 164.308(a)(5); and

(j) Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. section 164.530(c).

45. Defendant also violated the duties applicable to it under the Federal Trade Commission Act (15 U.S.C. § 45, *et seq*.) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC, pursuant to that Act, has concluded that a company's failure to maintain reasonable and appropriate data security for sensitive personal information is an "unfair practice" in violation of the FTC Act.

46. As evidenced by these laws, Defendant owed a common law duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the medical information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant also owed a duty to Plaintiff and Class members to provide reasonable security in compliance with industry standards and state and federal requirements, and to ensure that its computer systems, networks, and protocols adequately protected this medical information and were not exposed to infiltration. This also included a duty to Plaintiff and Class members to design, maintain, and test its computer systems

to ensure that the Private Information was adequately secured and protected; to create and implement reasonable data security practices and procedures to protect the Private Information through processes such as phishing, including adequately training employees and others who accessed information within its systems on how to adequately protect this information and avoid permitting such infiltration such as by use of multi-factor authentication; to implement processes that would detect a breach of its data security systems in a timely manner and to act upon data security warnings and alerts in a timely fashion; to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft; and to disclose in a timely and accurate manner when data breaches occurred.

47. Defendant also needed to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network was compromised, hackers cannot gain access to other portions of Defendant's systems. It is apparent that Defendant did not do so.

48. Defendant owed these duties to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate data security practices. Defendant affirmatively chose to design these systems with inadequate user authentication, security protocols and privileges, and set up faulty patching and updating protocols. These affirmative decisions resulted in criminals successfully carrying out a cyberattack and exfiltrating Plaintiff's and Class members' Private Information, to the detriment of Plaintiff and Class members. By taking affirmative acts inconsistent with these obligations that left Defendant's computer systems foreseeably vulnerable to criminals, Defendant disclosed and/or permitted the disclosure of Private Information to unauthorized third parties. Defendant thus failed to preserve the confidentiality of Private Information.

49. The Private Information of individuals remains of high value to criminals, as

evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[3] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[4] Criminals can also purchase access to entire company data breaches from $900 to $4,500.

50. Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[5]

51. It is incredibly difficult to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and

---

[3] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Aug. 12, 2026).

[4] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Aug. 12, 2026).

[5] *Identity Theft and Your Social Security Number*, Social Security Administration, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Aug. 12, 2026).

evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

52. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[6]

53. Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft.

54. Indeed, a robust cyber black market exists in which criminals post stolen medical information, Private Information on multiple underground internet websites, commonly referred to as the dark web, to create fake insurance claims, purchase and resell medical equipment, or access prescriptions for illegal use or resale. According to a 2017 Javelin strategy and research presentation, fraudulent activities based on data stolen in data breaches that are between two and six years old had increased by nearly 400% over the previous four years.[7] Thus, an offer of credit monitoring service that is only for two years is not an adequate remedy.

55. According to Experian, one of the three major credit bureaus, medical records can be worth up to $1,000 per person on the dark web, depending upon completeness.[8] Private

[6] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed Aug. 12, 2026).

[7] *See,* Brian Stack, *Here's How Much Your Personal Information is Selling for on the Dark Web* (2017) https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Aug. 12, 2026).

[8] *Id.*

Information can be sold at a price ranging from approximately $20 to $300.[9]

56. In this case, all evidence indicates that Plaintiff and Class members' Private Information was left unprotected, to be exfiltrated and sold on the dark web. Thus, this highly valuable data was left to be pilfered by criminals or reviewed by anyone.

57. Medical identity theft can also result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[10]

58. The Ponemon Institute found that medical identity theft can cost victims an average of $13,500 to resolve per incident, and that victims often have to pay off the imposter's medical bills to resolve the breach.[11]

59. In another study by the Ponemon Institute in 2015, 31% of medical identity theft victims lost their healthcare coverage as a result of the incident, while 29% had to pay to restore

---

[9] https://www.privacyaffairs.com/dark-web-price-index-2021/(last accessed Aug. 12, 2026).

[10] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, (2/7/14), https://khn.org/news/rise-of-indentity-theft/ (last accessed Aug. 12, 2026); See also, Medical Identity Theft in the New Age of Virtual Healthcare, IDX (March 15, 2021), https://www.idx.us/knowledge-center/medical-identity-theft-in-the-new-age-of-virtual-healthcare (last accessed Aug. 12, 2026).

[11] Brian O'Connor, Healthcare Data Breach: What to Know About Them and What to Do After One, Experian (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed Aug. 12, 2026).

their health coverage, and over half were unable to resolve the identity theft at all.[12]

60. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, only credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach, including Social Security numbers and names, is impossible to "close" and difficult, if not impossible, to change.

61. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[13]

62. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

63. The fraudulent activity resulting from the Data Breach may not come to light for years.

64. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen

[12] Ponemon Institute, Fifth Annual Study on Medical Identity Theft, (February, 2015), http://www.medidfraud.org/wp-content/uploads/2015/02/2014_Medical_ID_Theft_Study1.pdf (last accessed Aug. 12, 2026).

[13] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Aug. 12, 2026).

> data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

65. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class members, and of the foreseeable consequences that would occur if Defendant's computer systems were breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class members as a result of a breach.

66. Plaintiff and Class members now face years of constant monitoring of their financial and personal records, and worry about what unknown criminals might be doing or what they have already done using their Private Information. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

67. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's computer network, amounting to millions of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the Private Information.

68. To date, Defendant has offered Plaintiff and Class Members only 24 months of identity theft detection services. The offered service is wholly inadequate to protect Plaintiff and Class members from the threats they face for years to come, particularly in light of the Private Information at issue here, and is not an adequate remedy for the harms Plaintiff faces as a result of the Data Breach.

69. Specifically, Defendant did not prevent the criminals from disclosing Plaintiff's

---

[14] *Report to Congressional Requesters*, GAO, at 29 (June 2007), available at: https://www.gao.gov /assets/gao-07-737.pdf (last accessed July 16, 2025).

and Class members' Private Information on the Internet. Defendant has not and cannot retrieve the Private Information. The Private Information remains in circulation on the Internet for access, viewing, and misuse, causing damage to Plaintiff and Class members and breaching their confidentiality.

70. Defendant has not provided sufficient information in its Data Breach notice letter such that Plaintiff and Class members could understand and appreciate the full nature of the risk to them caused by Defendant's Data Breach, allowing them to make informed decisions about how to protect themselves and their Private Information.

71. Defendant has not provided credit monitoring and identity theft protection to Plaintiff and Class Members for a long enough period of time, because their Private Information may be used for years after that.

72. Defendant's identity theft protection offer does not prevent fraudulent transactions, such as unauthorized credit card charges or exchanges of Plaintiff's Private Information on the dark web from occurring using the Private Information disclosed by Defendant.

73. Enrollment in the service requires Plaintiff and Class members to disclose additional personal information to an unknown third party. Giving additional personal information to a chosen vendor of Defendant is not an acceptable resolution.

74. Additionally, Defendant has not taken the actions necessary and recommended by the FBI, CISA, NSA and other experts detailed above to prevent an attack by criminals, leaving Plaintiff and Class members vulnerable to subsequent breaches of their Private Information held by Defendant.

75. The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private

Information of Plaintiff and Class members.

76. As a result of the Data Breach, Plaintiff and Class members made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching the Data Breach; reviewing financial, healthcare, and other accounts for any indications of actual or attempted identity theft or fraud. Plaintiff has spent time dealing with the Data Breach, valuable time that otherwise could have been spent on other activities, including but not limited to work or recreation.

77. As a result of the Data Breach, Plaintiff and Class members have suffered anxiety as a result of the release of the Private Information, including anxiety about unauthorized parties viewing, selling, and using their information to commit identity theft and fraud.

78. Plaintiff and Class members suffered actual injury from having their Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of their Private Information, a form of property; (b) violation of their privacy rights; (c) loss of the benefit their bargained for data security protections; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

79. As a result of the Data Breach, Plaintiff and Class members anticipate spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff and Class members are at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ACTION ALLEGATIONS

80. Plaintiff seeks to certify the following Class of similarly situated persons under Fed. R. Civ. P. 23:

> All persons whose Private Information was obtained by unauthorized third parties in the Data Breach.

81. Plaintiff seeks to certify the following Subclass of similarly situated persons under Fed. R. Civ. P. 23:

> All persons in New Jersey whose Private Information was obtained by unauthorized third parties in the Data Breach.

82. Excluded from the Class are Defendant's officers and directors; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

83. Plaintiff reserves the right to amend or modify the Class definition and/or create additional subclasses as this case progresses.

84. Numerosity. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes that the Class of more than 3.8 million persons.

85. Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class members' Private Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Class members to safeguard their Private Information;

f. Whether Defendant breached its duty to Class members to safeguard their Private Information;

g. Whether Defendant knew or should have known that their data security systems and monitoring processes were deficient;

h. Whether Defendant should have discovered the Data Breach sooner;

i. Whether Plaintiff and Class members suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's conduct was negligent;

k. Whether Defendant was unjustly enriched by unlawfully retaining a benefit to which Plaintiff and Class members have a superior right in equity; and;

l. Whether Plaintiff and Class members are entitled to damages, punitive damages, treble damages, and/or injunctive or other equitable relief.

86. Typicality. Plaintiff's claims are typical of those of other Class members because Plaintiff's information, like that of every other Class member, was compromised in the Data Breach.

87. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's counsel is competent and experienced in litigating class actions.

88. Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class members, in that all of Plaintiff's and Class members' Private Information was stored on Defendant's network and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

89. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

90. Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## COUNT I
## Negligence
## (on behalf of Plaintiff and the Class)

91. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

92. As a condition of obtaining treatment, Plaintiff and Class members provided Defendant with their Private Information.

93. Plaintiff and Class members entrusted their Private Information to Defendant with the understanding and relying upon Defendant to exercise reasonable care in the protection of their Private Information.

94. Defendant had a duty to take reasonable measures to protect the Private Information of Plaintiff and Class members from unauthorized disclosure to third parties. This duty is inherent in the nature of the exchange of highly sensitive personal information in connection with the patient-physician relationship.

95. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class members could and would suffer if the Private Information were wrongfully disclosed in a Data Breach.

96. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, using, and retaining of the Private Information of Plaintiff and Class members, without adequate data security, involved an unreasonable risk of harm to Plaintiff and Class members.

97. Defendant had a duty to exercise reasonable care in safeguarding, securing, retaining, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, configuring, maintaining, and testing Defendant's security protocols to ensure that the Private Information of Plaintiff and Class members in Defendant's possession was adequately secured and protected.

98. Defendant also had a duty to exercise appropriate practices to remove Private Information that was no longer required.

99. Defendant had a duty to encrypt the sensitive Private Information while stored and maintained.

100. Defendant had a duty to segregate sensitive Private Information from other portions of the network, such as by using firewalls.

101. Defendant had a duty to properly train employees to recognize phishing attempts and other common data security risks.

102. Defendant also had a duty to implement and maintain procedures to detect and prevent the improper access, exfiltration, and misuse of Private Information.

103. Defendant's duty to use reasonable security measures arose as a result of the relationship that existed between Defendant and Plaintiff and Class members. Plaintiff and Class members entrusted Defendant with their Private Information and relied upon Defendant to implement adequate data security and reasonable data retention policies.

104. Defendant was subject to an independent duty untethered to any contract between Defendant and Plaintiff or Class members.

105. A breach of security, unauthorized access, and resulting injury to Plaintiff and Class members was reasonably foreseeable, particularly in light of Defendant's inadequate security practices, the detailed warnings published by governmental agencies, and news reports of other data breaches.

106. Plaintiff and Class members were the foreseeable and probable victims of Defendant's inadequate and unreasonable data security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information, the critical importance of providing adequate security of that Private Information, the necessity for

encrypting Private Information, and the harm that can arise from retaining Private Information following the expiration of any legitimate business purpose.

107. Defendant's conduct created a foreseeable risk of harm to Plaintiff and Class members. Defendant solicited, collected, digitized, and aggregated Plaintiff's and Class members' Private Information, failed to encrypt the Private Information, failed to implement other reasonable industry standard measures to safeguard Private Information, and failed to implement retention policies that delete Private Information.

108. Plaintiff and Class members had no ability to protect their Private Information that was in, and remains in, Defendant's possession, and no sign that Defendant was failing and refusing to implement and maintain reasonable data security practices over their Private Information until they received their notification letters.

109. Defendant was in a position to protect against the harm suffered by Plaintiff and Class members as a result of the Data Breach.

110. Defendant had a duty to adequately disclose that the Private Information might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and the Class members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information.

111. Defendant had a duty to employ proper procedures to prevent the unauthorized disclosure and unauthorized sharing of the Private Information to criminals.

112. Defendant, through actions and/or omissions, unlawfully breached duties to Plaintiff and Class members by failing to implement and maintain industry-standard protocols and

to exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and Class members.

113. Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and Class members in violation of standard industry rules, regulations, and practices at the time of the Data Breach.

114. Defendant, through actions and/or omissions, unlawfully breached the duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent unauthorized dissemination of Private Information.

115. Defendant breached the duty to remove Private Information that it was no longer required to retain pursuant to regulations.

116. Defendant breached the duty to encrypt Private Information and to segregate it from other portions its network.

117. Defendant breached the duty to adequately train employees to recognize and avoid phishing attempts and other basic cybersecurity risks.

118. Defendant, through actions and omissions, unlawfully breached the duty to adequately and timely disclose to Plaintiff and Class members the existence and scope of the Data Breach.

119. Defendant breached the duty to safeguard Plaintiff's and Class members' Private Information by failing to retain such information in an encrypted form.

120. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, the Private Information of Plaintiff and Class members would not have been compromised.

121. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class members and the harm, or risk of imminent harm, suffered by Plaintiff and Class members. The Private Information of Plaintiff and Class members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

122. As a direct and proximate result of Defendant's numerous negligent acts and omissions, Plaintiff and Class members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety.

123. As Defendant instructed, advised, and warned in the notice letters, Plaintiff and Class members must now closely monitor their financial accounts to guard against future identity theft and fraud. Plaintiff and Class members have heeded such warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts included, and will include into the future, protective steps: *e.g.*, reviewing financial statements, changing passwords, and signing up for credit and identity theft monitoring services. The loss of time and other mitigation costs are tied directly to guarding against and mitigating against the imminent risk of identity theft.

124. As a direct and proximate result of Defendant's negligent acts and omissions, Plaintiff and Class members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d)

loss of time and loss of productivity heeding Defendant's warnings and following its instructions in the notice letter; (e) financial costs incurred due to actual identity theft; (f) the cost of future identity theft monitoring; (g) loss of time incurred due to actual identity theft; (h) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (i) and diminution of value of their Private Information.

125. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to show that it undertakes appropriate and adequate measures to protect the Private Information in its possession. Plaintiff and Class members are, therefore, also seeking injunctive relief for the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to safeguard the Private Information.

126. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to recover actual and punitive damages.

**COUNT II**
**Negligence *per se***
**(on behalf of Plaintiff and the Class)**

127. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

128. Defendant violated HIPAA regulations, including by:

- Failing to ensure the confidentiality and integrity of electronic PHI that Defendant create, receive, maintain, and transmit, in violation of 45 C.F.R.

section 164.306(a)(1);

- Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. section 164.312(a)(1);
- Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. section 164.308(a)(1);
- Failing to identify and respond to suspected or known security incidents and mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 C.F.R. section 164.308(a)(6)(ii);
- Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. section 164.306(a)(2);
- Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. section 164.306(a)(3);
- Failing to ensure compliance with HIPAA security standard rules by its workforce, in violation of 45 C.F.R. section 164.306(a)(4);
- Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. section

164.502, *et seq.*;

- Failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. sections 164.530(b) and 164.308(a)(5); and
- Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. section 164.530(c).

129. "Section 5 of the FTC Act [15 U.S.C. § 45] is a statute that creates enforceable duties, and this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of precedent interpreting the statute and applying it to the data beach context." *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020). "For example, in *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015), the United States Court of Appeals for the Third Circuit affirmed the FTC's enforcement of Section 5 of the FTC Act in data breach cases." *Capital One*, 488 F. Supp. 3d at 407.

130. Plaintiff's and Class members' Private Information was and is nonpublic personal information and customer information.

131. Plaintiff and Class members are in the group of persons that HIPAA and the FTC Act were enacted and implemented to protect, and the harms they suffered in the Data Breach as a result of Defendant; violations of HIPAA and the FTC Act were the types of harm the statutes and regulations are designed to prevent.

132. As a direct and proximate result of Defendant's negligent acts and omissions, Plaintiff and Class members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety.

133. As a direct and proximate result of the conduct of Defendant that violated HIPAA and the FTC Act, Plaintiff and Class members have suffered and will continue to suffer the foreseeable economic and non-economic harms as described herein.

134. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to recover actual and punitive damages.

**COUNT III**
**Breach of Implied Contract**
**(on behalf of Plaintiff and the Class)**

135. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

136. Defendant provides third party administrative services to Plaintiff's and Class members' health care providers. Plaintiff and Class members formed an implied contract with Defendant regarding the provision of those services through its collective conduct, including by Plaintiff and Class members providing their Private Information to Defendant in exchange for the services offered.

137. Through Defendant's offering of these services, it knew or should have known that it needed to protect Plaintiff's and Class members' Private Information in accordance with its own policies, practices, and applicable state and federal law.

138. As consideration, Plaintiff and Class members paid for healthcare services and turned over valuable Private Information to Defendant.

139. Defendant accepted possession of Plaintiff's and Class members' Private Information for the purpose of providing services, including data security, to Plaintiff and Class members.

140. In delivering their Private Information to Defendant in exchange for its services, Plaintiff and Class members intended and understood that Defendant would adequately safeguard their Private Information.

141. Defendant's implied promises to Plaintiff and Class members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information, including its business associates, vendors, and/or suppliers, also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its business associates, vendors, and/or suppliers is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees, business associates, vendors, and/or suppliers; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) reducing the risk of public knowledge of their diagnosis(es) related to the exposure of the identities of their health care providers; and (8) taking other steps to protect against foreseeable data breaches.

142. Plaintiff and Class members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

143. Had Defendant disclosed to Plaintiff and the Class members that it did not have adequate data security and data supervisory practices to ensure the security of their sensitive data, Plaintiff and Class members would not have agreed to provide their Private Information to Defendant.

144. Defendant recognized (or should have recognized) that Plaintiff's and Class members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and Class members.

145. Defendant violated these implied contracts by failing to employ reasonable and adequate security measures and supervision of its vendors, business associates, and/or suppliers to secure Plaintiff's and Class members' Private Information.

146. A meeting of the minds occurred, as Plaintiff and Class members agreed, *inter alia*, to provide their accurate and complete sensitive personal information to Defendant in exchange for Defendant's agreement to, *inter alia*, protect their Private Information.

147. Plaintiff and Class members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT IV**
**Breach of Fiduciary Duty**
**(on behalf of Plaintiff and the Class)**

148. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

149. A relationship existed between Plaintiff and Class members and Defendant in which Plaintiff and Class members put their trust in Defendant to protect the Private Information of Plaintiff and Class members and Defendant accepted that trust.

150. Defendant breached the fiduciary duties that it owed to Plaintiff and Class members by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing in its duty of care to protect the Private Information of Plaintiff and Class members.

151. Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and Class members.

152. But for Defendant's breach of fiduciary duty, the damage to Plaintiff and Class members would not have occurred.

153. Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and Class members.

154. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff and Class members are entitled to and demand actual, consequential, and nominal damages and injunctive relief.

**COUNT V**
**Violation of the New Jersey Consumer Fraud Act**
**N.J. Stat. § 56:8-1, *et seq.***
**(on behalf of Plaintiff and the Subclass)**

155. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

156. Under the New Jersey Consumer Fraud Act ("NJCFA"), it is unlawful for any person to use or employ any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged.

157. Plaintiff and Subclass members are considered "persons" for the purpose of the NJCFA.

158. Defendant committed an unconscionable commercial practice, including but not limited to the following:

(a) Defendant violated Section 5 of the FTCA, which prohibits "unfair . . . practices in or affecting commerce," including as interpreted by the FTC, the unfair act or practice by a business, such as Defendant, of failing to employ reasonable security measures to ensure access to its "commercial datacenter," despite representing otherwise; and

(b) Defendant also violated HIPAA Privacy and Security Rules by failing to use reasonable security measures to ensure access to its "commercial datacenter," despite representing otherwise, by not complying with applicable industry standards.

159. Defendant further committed deception, fraud, false pretenses, false promises, misrepresentations, and/or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, including but not limited to the following: Defendant knowingly and willingly misrepresented, through statements and omissions, that its network maintained adequate protections and maintained data in a HIPAA-compliant manner to induce Plaintiff and Subclass members to provide Defendant with their Private Information, and authorize their healthcare providers to share Private Information with Defendant. Plaintiff's and Subclass members' decision to trust Defendant with their Private Information was based on Defendant's statements that Defendant would take adequate security precautions and maintain industry standard cybersecurity measures, and omissions that Defendant maintained weak data security that failed to comply with the law.

160. Defendant omitted material facts with the intent that others rely thereon.

161. Defendant did so in connection with the sale or advertisement of merchandise.

162. At all relevant times, Defendant was willfully and knowingly engaged in the use of an unfair and deceptive practice declared to be unlawful.

163. As a direct and proximate result of Defendant's acts and omissions, Plaintiff and Subclass members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety.

164. As a direct and proximate result of the conduct of Defendant that violated HIPAA and the FTC Act, Plaintiff and Subclass members have suffered and will continue to suffer the foreseeable economic and non-economic harms as described herein.

165. As a direct and proximate result of Defendant's acts and omissions, Plaintiff and Subclass members are entitled to recover actual and punitive damages.

## COUNT VI
**Unjust Enrichment**
**(on behalf of Plaintiff and the Class)**

166. Plaintiff re-alleges and incorporates by reference paragraphs 1–90 as if fully set forth herein.

167. This claim is brought in the alternative to Plaintiff's other claims at law.

168. Defendant benefited from receiving Plaintiff's and Class members' Private Information.

169. Defendant also understood and appreciated that Plaintiff's and Class members' Private Information was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

170. Plaintiff and Class members conferred a benefit upon Defendant by paying an amount of money that covered its services, and in connection therewith, by agreeing to provide

access to their Private Information to Defendant with the understanding that Defendant would implement and maintain reasonable data privacy and security practices and procedures. Plaintiff and Class members should have received adequate protection and data security.

171. Defendant knew Plaintiff and Class members conferred a benefit which Defendant accepted. Defendant profited from these transactions and appreciated the benefits.

172. Defendant appreciated the benefits in reduced costs of overhead by failing to employ adequate human and technical resources to protect its systems from foreseeable cyberattacks, and to respond and remediate immediately.

173. Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class members.

174. Defendant should not be permitted to retain money rightfully belonging to Plaintiff and Class members, because Defendant failed to implement appropriate data security measures and caused the Data Breach.

175. Defendant accepted and wrongfully retained these benefits to the detriment of Plaintiff and Class members.

176. Defendant's enrichment at the expense of Plaintiff and Class members is and was unjust.

177. As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and Class members seek restitution of their money paid to Defendant, and disgorgement of all profits, benefits, imposition of a constructive trust, and other compensation obtained by Defendant calculated as the difference between the cost for adequate data security and the lesser costs Defendant actually incurred by cutting corners, plus attorneys' fees, costs, and interest thereon.

**COUNT VII**
**Declaratory Relief**
**(on behalf of Plaintiff and the Class)**

178. The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., provides that a Court may declare the rights and legal relations of the parties and grant further relief as necessary. The Court has broad authority to prohibit conduct of parties, such as the unlawful conduct alleged herein.

179. An actual controversy exists regarding the various duties of Defendant to implement and maintain adequate data security because Defendant continue to possess Plaintiff's and Class members' Private Information and will acquire more in the future. Plaintiff's and Class members face an ongoing threat from the possibility that the Data Breach is not fully contained in Defendant's systems, that Defendant's forensic investigation and remedial efforts were not sufficient, and that Defendant's data security practices, or lack thereof, continue to fail to provide reasonable data security for Plaintiff and Class members against new threats going forward.

180. Accordingly, Plaintiff requests declaratory relief as follows:

a. Defendant owes a duty to use reasonable data security to secure the Private Information;

b. Defendant has a duty to notify impacted individuals and provide details concerning the manner in which the Data Breach was carried out, the identity of the criminals suspected of obtaining unauthorized access, and other details to enable Plaintiff and Class members to understand the risks they face;

c. Defendant breached the foregoing duties;

d. Defendant should be ordered to disclose to Plaintiff and Class members the details of its forensic investigation and incident response so that Plaintiff and Class members can understand the risks they face and whether Defendant's characterization of the Data Breach are accurate;

e. Defendant should be ordered (subject to an agreeable protective order) to allow Plaintiff and Class members to inspect Defendant's data security systems and processes to ensure that they are adequate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class and Subclass, prays for judgment against Defendant and in Plaintiff's favor, as follows:

a) For an Order certifying this action as a Class action and appointing Plaintiff as Class Representative and her counsel as Class Counsel;

b) For damages in an amount to be determined by the trier of fact;

c) For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class members;

d) For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

e) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

f) Imposition of a constructive trust for the benefit of Plaintiff and Class members;

g) Pre- and post-judgment interest on any amounts awarded;

h) For reasonable attorney's fees, costs, and expenses, and,

i) Such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Plaintiff LAURA WOLF, individually and on behalf of all others similarly situated,

By: */s/ Marc E. Dann*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael Smith (0097147)
Jon Heberling (106514)
**DannLaw**
15000 Madison Avenue
Lakewood, OH 44107
Phone: (216) 373-0539
Fax: (216) 373-0536
*notices@dannlaw.com*

Thomas A. Zimmerman, Jr.
*(pro hac vice forthcoming)*
**ZIMMERMAN LAW OFFICES, P.C.**
7199 S. Kingery Highway, Unit 1148
Willowbrook, Illinois 60527
Phone: (312) 440-0020
Fax: (312) 440-4180
*tom@attorneyzim.com*
www.attorneyzim.com

*Counsel for the Plaintiff, Class, and Subclass*